WINTER, Circuit Judge,
dissenting:
I respectfully dissent.
*229 The present appeal involves a New York state tax on lottery winnings by persons who previously received direct welfare or workfare benefits. N.Y. Tax Law § 1613— b (McKinney 2010). A withholding (“interception” in appellant’s lexicon) of this tax occurs before the lottery winner receives his or her winnings, presumably along with a similar withholding of federal, state, and local income taxes. Id. at § 1613-b(3).
The tax provision contains no language governing disbursement of the revenue received. The complaint alleges that New York State, by reason of New York law, regulation or custom, disburses the revenue from this tax to the municipality that paid the welfare benefits. This allegation is refined in appellant’s brief, which states that only one-half of the tax withheld from lottery winnings ($2500 in Carver’s case) is disbursed to the municipality while the other half is kept by the state. The “reimbursement” to the municipality is an attempt to conform to New York Social Services Law Section 153 requiring that New York State bear one-half of the welfare disbursements made by municipalities. N.Y. Soc. Serv. Law § 153(1)(d) (McKinney 2010).
There is no allegation that the City plays any role whatsoever in the levying of the tax, its collection, or the disbursement of the funds. At best, the City passively receives the money from the State, along with other State subsidies.
The complaint alleges that the harm to Carver is the withholding of the state tax on his lottery winnings. Notably, there is no allegation in the complaint, or provision in any New York law or regulation, that, if the State ceased to disburse these funds to the City or if the City rejected them, the State would return the $2500 to Carver rather than keep it for itself. The statute creating the tax and the provision regarding disbursement are entirely separate and independent. Changing the rules regarding disbursement would, therefore, have no effect on the levying of the tax on Carver. Nor does he allege otherwise.
Given the allegations of the complaint, Carver has no standing to bring a Fair Labor Standards Act (“FLSA”) action against the City. The State made all relevant decisions and took all the administrative actions that resulted in the withholding of Carver’s winnings. The City has done absolutely nothing to cause the loss to Carver of his lottery winnings.
My colleagues seek to address this problem by theorizing that the City workfare payments to Carver were “conditioned,” when made, on a possible “recoupment.” Of course, no such express condition can be found in the workfare payments Carver received, because the so-called “recoupment” could occur, if at all, only by operation of the provisions of whatever state laws existed when and if Carver won the lottery. Either the tax or the disbursement, or both, might well have been altered or repealed by the State, and by the State alone, when and if Carver won the lottery.
The theory that the workfare payments to Carver inflicted an injury because they were “conditioned” on compliance with whatever state tax laws might be in effect when and if he won the lottery is surely a stretch. The workfare payments were also conditioned on all taxes, federal, state, and local that might be levied. Indeed, all wages paid by all employers to all employees are conditioned on the levying and/or withholding of federal, state, and local taxes.[1] In my view, an employer does not *230 inflict an injury on an employee by paying wages that may be taxed.
Moreover, limiting the adjudication of Carver’s claims to the party that took his winnings (and will keep the part disbursed to the City if the City were to reject or return it) risks no miscarriage of justice. All Carver had to do was join the State as a defendant. Indeed, he has sued the State in state court. The present case is thus one of two judicial proceedings initiated over the withholding of Mr. Carver’s lottery winnings, of which $2500 was disbursed to the City. The other state court action asserts all the various claims made here, including the FLSA claim, against the State for the full $5000.
This is not, therefore, a case in which standing doctrine should be stretched beyond recognizable parameters. The judicial, municipal, and private resources poured into Carver’s attempt to recover $5000 must be in excess of six figures. Now we have to face a remand to the district court followed perhaps by another appeal to this court.
I therefore respectfully dissent.

. Federal regulation expressly allows employers to deduct taxes imposed by the law of any sovereign without regard to the fact that the deduction reduces the net wage below FLSA *230 standards. 29 C.F.R. § 531.38 (2010). In short, the City itself could impose and deduct an income tax on Carver that reduced his workfare payments below FLSA standards and still not violate those standards. Id.
Moreover, the FLSA has a statute of limitations of two years. 29 U.S.C. § 255(a) (2010). If the violation occurred when the workfare payments were made, as my colleagues theorize, rather than when the State took the money, any claim would be time-barred.